We'll move to our fifth case this morning, W.G.A. v. Sessions, Case 16-4193. Thank you, Your Honors. May it please the Court, my name is John Skaken and I represent Petitioner W.G.A. in this Immigration Appeals Decision. Shortly after Petitioner's brother defected from the Mara 18 gang in El Salvador, four gang members found Petitioner at his relatively remote farm, held a gun to his head, and demanded that he disclose where his brother was hiding. Instead of doing so, Petitioner fled to the United States. That didn't stop the gang. It continued demanding that Petitioner's family give up the brother. It even went to a close family friend, who was like a brother to Petitioner, and demanded that he disclose where the brother was hiding and where Petitioner was. When that close friend didn't, he was brutally murdered, literally cut into pieces by the gang. Petitioner seeks asylum, withholding of removal, and protection under the Convention Against Torture or CAP. The Board denied relief on each claim and we ask this Court grant the petition for review. So the Petitioner is now in El Salvador, is that right? That's correct, Your Honor. DHS wrongfully removed him while his appeal was pending before the Board. We'll talk about that, but I guess it would be helpful for me to understand, I don't see how we can grant withholding of removal on the one hand, or how even the Board could do that at this point. I'd also like you to explain to us your take on your disagreement with the government. Both sides seem to want a remand, but a very different kind of remand, and I'd like to understand exactly what you think is appropriate and how it would differ from what the government is suggesting. Of course, Your Honor. I think the key difference is the scope of the remand and the guidance offered by this Court. As we understand it, the government is seeking an open-ended remand without any guidance from the Court as to the issues here, and we oppose that for at least three reasons. It would be pointless, it would be prejudicial, and there's no affirmative reason offered by the government for that type of remand. So first, such a remand would be pointless because in this case, Petitioner cited this Court's case law, including CC, that the law of this case, I'm sorry, the law of this circuit in terms of what's required to state a legally cognizable social group is the immutable characteristics test. The Board, however, relied on its own MEVG decision to impose a social distinction requirement. That was error given this Court's precedence from the 2013 en banc decision in CC, which stated that the only test is the immutable characteristics test, and that test has been as this last summer's Oriana Arias decision. The Board's decision to rely on MEVG and impose a social distinction requirement in this case is a clear statement of the Board's position that it believes that social distinction is required. A remand isn't going to resolve that question. In fact, this Court faced a similar situation in Marin Rodriguez, where it denied a request for a remand, just like that here, because there was no point, the Court said, in remanding to a body that has already decided an issue, unless there's a reason to believe it's going to reconsider that. There's no such reason here. Well, the Board's most recent decision in the MEVG case is an interpretation of the statutory phrase, particular social group, which a test for immutable characteristics doesn't really address that same issue. An asylum claim based on membership in a particular social group, the statutory phrase is ambiguous, and we would owe Chevron deference to the Board's decision to clarify the meaning of that phrase in light of our decision in the Katimi case, and that's what it did in the MEVG case, and we really haven't had the question briefed in Chevron terms, whether that's an interpretation of the statutory phrase that we would give deference to, and whether it is, in fact, a reasonable interpretation. It's sort of like the party starships passing in the night. They're not engaging on that precise issue. You're arguing that it can't stand because it's inconsistent with CC's immutable characteristics language, but that doesn't really engage with the central question here, which is whether the Board's interpretation, and we haven't addressed this yet, we have no precedent on that, is a reasonable interpretation under Chevron. So, Your Honor, I agree that this Court has not specifically stated that MEVG is not going to be a quoted deference, but I do believe that CC remains authoritative, and that's why this Court continues to cite it and rely on it, even for the years after MEVG. CC really didn't address this question. Understood, Your Honor, but I think substantively the tests are the same. So MEVG was quite clear and explicit in saying that the Board was not offering a new interpretation. It used those exact words. It said it was adhering to the prior interpretation from the SEG line of cases, and that prior interpretation was expressly rejected by this Court in Gattini and in CC as not reasonable, and that's why CC said the only test that we accord Chevron deference to is the immutable characteristics test. If MEVG didn't adopt a new interpretation, then there's no need for a new Chevron analysis. It's just the same interpretation that this Court has already rejected. And in fact, I think when we look at the substance of the two tests applied, as it's laid out in SEG and as it's laid out in MEVG, they are the same. Both emphasize this core requirement of some sort of societal recognition or societal perception that a group is a distinct segment of society, and in fact that's the language that the Gattini decision expressly rejected. I also think relevant here is the fact that this Court does and has repeatedly noted that it rejects the companion criterion from MEVG, particularity, that breadth is no bar to a cognizable social group. And those statements are very clear in cases like Lozano's Zuniga, as well as I think the recent Gutierrez case, and that I think bears this Court's views on MEVG. But I know what the Board said in MEVG, but in fact, isn't there a difference between the social visibility standard that was applied earlier and the social distinction standard that's applied now? The difference is that they don't require social visibility anymore. I mean, isn't that a substantive change in the Board's interpretation, reinterpretation, whatever you want to call it, of the phrase that Judge Seitz was referring to? Well, I think there's two points I'd like to make to that, Your Honor. And the first is that I think, at least in the Board's mind, there isn't a substantive difference between the two decisions. And the second point is that if that's true, that there is a substantive difference, then MEVG has to fall under the rubric of procedural reasonableness because the agency didn't recognize it was changing its interpretation. So I just want to step back to the ocular visibility point for a moment. And one of the points made in MEVG was that they clarified that the social visibility criterion set out in SEG, and that line of cases, never actually required ocular visibility, even though there were court cases in the federal courts that held that it did. In particular, the Third Circuit did that, and this Court recognized that in Benitez-Ramos. I think that that— I think the right interpretation of that is the agency saying, that's what we said, but it's been misinterpreted, and so now we're clarifying what we meant. I think that's fair, Your Honor. And I think— You know, we're not—we haven't yet been asked to test the substantive interpretation under Chevron, and the parties haven't briefed that issue here. So I'm not sure why we would reach out and decide that without appropriate briefing, whether that interpretation is reasonable. When the parties haven't briefed it in the board, might make a different decision on the facts in a remand, because the government wants a remand for a factual do-over as well as a legal do-over. So if the case is resolved differently on the facts, then we might have a very different second appeal or no second appeal at all. I think you're very much right that there are other independent bases to find in Petitioner's favor. But stepping back just a moment to the first concern Your Honor articulated, I do think the Gattini decision and the language used in that opinion went to the heart of the substantive social visibility slash distinction criteria. On page 615 of the Gattini opinion, the court criticized and rejects any requirement that the defining characteristics of the social group be, quote, of concern to anyone in the society issue. It criticizes and rejects any requirement that the society perceive people with that characteristic as, quote, any segment of the population in any meaningful respect. That language goes far beyond a simple ocular visibility requirement. That language goes directly to the heart of the recognition, the perception requirement that's stated in MEVG. As a result, we think Gattini did reject exactly what MEVG says the board thinks needs to be required. And that's a substantive decision that still remains binding precedent here and we think was followed and enforced through CC and the other cases in this court that say the test remains the immutable characteristics test. On the point Your Honor raised about the fact that this hasn't been briefed, Your Honor, you know, we understand and certainly recognize that and can appreciate the court's reticence. That said, we would push back a bit in that petitioner was wrongfully removed and has been in hiding in El Salvador. The government had a fully briefed remand motion and then chose not to contest our arguments on this issue in its answering brief. A remand on this issue, assuming it doesn't lead to a different outcome, which seems unlikely, is simply going to put our petitioner at further risk for a much longer time. The frank, you know, fact of the matter is that this case looks like it would follow the steps of Reyes-Mendez, where the board, I'm sorry, the government requested a remand, this court granted it, and then the board repeated its social group analysis word for word and the exact same issue came back to this court a year later. I'd also like to address some of the factual issues that are independent bases for relief for the petitioner. Actually, your time has expired. And they were well briefed. My apologies. I missaw the time. I saw one. That's fine. Thank you. Good morning, Your Honors. May it please the court. Elizabeth Fitzgerald Sambu on behalf of the Attorney General of the United States. This is an immigration case involving a Salvadoran petitioner who applied for asylum, statutory withholding of removal, and withholding of removal under the Convention Against Torture. Respondents... So how and why was he removed? I'm not aware of the specifics of how or why he was removed, but I did reach out to the Department of Homeland Security, who has sole discretion over removals of individuals. Even where there's an appeal pending? Yes. At all times, they have discretion over, well, they're not authorized to remove someone while an appeal is pending. So in this case, the removal was unauthorized. It's very troubling. Yes. What should we do about it? Well, the Department of Homeland Security still has a discretion of whether to return someone. So in some cases, they have paroled individuals back into the United States. Why should we not order that here? Well, respectfully, I do not believe that this court has the authority to order that someone be returned because that authority is within the sole discretion of the Department of Homeland Security under the Immigration and Nationality Act. So our position is that it's still within... Even when it has violated the law in the first instance? Yes. So if petitioner would like to challenge that, this is not the appropriate forum for doing so because this is a petition for review of the removal order itself. So if he would like to challenge actions that the Department of Homeland Security took, he can do so in perhaps a lawsuit or in a different mechanism than this case. So, if you have no further questions about the removal, respondent again respectfully requests that this court remand petitioner's asylum and statutory withholding claims. Under Wren, this court's decision in Wren, this court has authorized the government to seek remand without confessing error, which is what we're doing in this case. Petitioner set forth two claims, at least for his asylum and statutory withholding of removal case. One is based on his nuclear family, and the board issued precedent after the agency decisions in this case in matter of LEA, which provide much needed clarity for family, PSG, or particular social group cases, especially with regard to the nexus requirement, which was... What did LEA change? Well, LEA confirmed the law that was already in existence. Exactly. Exactly. But there was... I'm troubled by... I was on the panel in Reyes-Mendez against Lynch, in which the government asked for a remand so it could reconsider. We granted it over opposition, and as you will recall, the government simply... The agency simply repeated its analysis literally word for word. So, once burned, twice shy. Right. Well, the issue in this case is that there are missing factual findings, so that's why we're arguing that there should be an open remand, because the immigration judge, who is the only entity authorized to make factual findings, concluded that the petitioner failed to show that there was a central reason for why he was harmed in the past, but in making that conclusion, the immigration judge solely relied on the fact that other members of the particular social group, his nuclear family, were not harmed, but that... You agree that they were. Well, they were not physically harmed, but they were threatened. We do agree. That's in the record. But the fact of whether other family members were harmed or threatened is telling in what the persecutor's motive is, but it's not dispositive. So that's why, in this case, the immigration judge's analysis is sort of missing the necessary findings that must be made, because just relying on that alone is not enough to determine... So the immigration judge essentially never said what the persecutor's motive was. The immigration said that one central reason for the persecutor's motive was not the family PSG, but the immigration judge never concluded what the motive actually was, or with a, I guess, in-depth legal analysis or factual analysis about why the family PSG was not a central reason versus a minor reason. Sorry, what was the acronym you were just using? Sorry, Particular Social Group PSG, but I'll state it. So that's why we're arguing that this court should remand for the... Well, yes, exactly, for the immigration judge to make that factual finding in the first instance, because it wasn't done in this case. So if this court makes that factual finding in the first instance, that could potentially create a Ventura or Chenery issue. But although a petitioner is concerned that... Could create a what kind of issue? A Chenery or a Ventura violation if this court... Ventura? Yes, because Ventura asserts that there is an ordinary remand rule, so that if the agency did not make factual findings, this court is prohibited from making the factual finding in the first instance. So we would urge this court to remand for the immigration judge to make that factual finding in the first instance. And although a petitioner is concerned that there would be a lack of guidance, this court of course could state in its decision that the agency should make a factual finding and make the factual findings with the necessary analysis. Counsel, I'd like to ask you about a case that was discussed in LEA. It was a Fifth Circuit case dealing with family. In that particular case, it was gangs from Honduras rather than El Salvador, but it presents some similar issues. The case is Ramirez v. Mejia v. Lynch, 794 F. 3rd 485, cited in LEA. Which concludes, in this case the petitioner was female, but otherwise it looks a lot like this, threatened to seek information about a brother who had left the gang. The Fifth Circuit wrote that evidence that gang members sought information from petitioner about her brother, without more, does not support her claim that the gang intended to persecute her on account of her family. I'm troubled by that reasoning because it seems to me that it overlooks a couple of different things, and I'd like to get your reaction to it. It overlooks the interorum effect on other gang members. That is, don't stray from our criminal path or your family members are going to be terrorized and harmed because they are your family members. And it also seems to overlook both the U.S. State Department's own warnings to the effect that there are widespread reports about this practice of threatening and harming family members of gang members, and the UNHCR's guidance on this issue, which makes exactly the same point. All right. I'm not familiar with the exact details of that case, but I would say that a nexus requirement sort of has two requirements, and this actually relates to the MABG issue as well. So essentially, in the Immigration and Nationality Act, Congress intended to protect people for the specific five protected grounds that are listed in the refugee definition. And so essentially with that requiring a nexus, Congress acknowledged that some people would be persecuted or subject to persecution in the future, but if it's not on account of one of those five protected grounds, then that person is not a refugee. Right. We have recognition here, however, as I understand the Board's decision, that WGA's nuclear family at least does count as a protected particular social group. Yes, exactly. The agency assumed cognizability of that group. And we have widespread recognition of this pattern of persecuting people because of their relationships, threatening people, even killing people because of their relationships with gang members. Right. So each case is case by case because a nexus requires factual findings. But in addition to the persecutor being motivated by the protected ground, which would be a nuclear family particular social group, additionally the agency must determine whether that motivation was a central reason for persecuting the individual or whether it was a minor incidental reason. So that's sort of the case law that... Describe a case for me where that would be a minor reason. Well, in matter of LEA, which is the intervening case that we are relying on for remand, was actually a perfect example because in that case it was a nuclear family particular social group. But the persecutors were... So essentially in that case the applicant's father owned a store and then there were drug dealers who wanted the family's store because it was a good location for drug dealing and for them to make lots of money. So in that case the persecutors targeted the applicant because of his family membership, but their ultimate central motive was to make money by dealing drugs at that family's store. They didn't actually have animus against the family or target the family because they disliked that family. So in that case the board held that that... So the board's position is that some kind of animus is necessary as opposed to we carry out our criminal goals by terrorizing gang members, other gang members and their families. And that's not protected persecution. It's hard to say just generally only because each case is very specific to the facts. So essentially Congress intended to protect, as I said, people in those five protected grounds. So sometimes that means that victims of ordinary crime, if a central reason was also a protected ground, it's okay that another reason was ordinary crime or opportunistic crime. But there are some cases where, as in the board's matter of LEA decision, that the opportunistic crime and financial motive was central reason and the family membership was minor. So I can't say in all cases it will be this or in all cases it will be that because each case really does depend on the facts and it really is the factual finding of what motivated the persecutor in that case. Would it be appropriate on... This is going to be remanded in one form or another. Correct. Would it be appropriate for this court to note that the fact that Petitioner WGA was removed apparently unlawfully, it needs to be taken into account by the immigration judge in terms of access to evidence, additional evidence? I don't think this court is prohibited from saying that. I don't know that it necessarily mandates the agencies to do one thing or another, but it's definitely something that the agencies should take into consideration. So I think it would be appropriate if this court wishes to do that. And I do want to quickly touch on what the petitioner was arguing about with Chevron deference to the social distinction requirement, as clarified in the matter of MEVG and WGR. As Judge Sykes said, we didn't brief this issue because we don't believe this case is that issue here for a couple of reasons. One, his nuclear family claim is separate from this cognizability issue, and that claim itself might be dispositive on remand. And additionally here, this case provides a poor vehicle for deciding whether social distinction is a reasonable requirement because the agency's decision or the board's decision lacks any analysis of how they came to the conclusion that the applicant failed to show social distinction. But we do argue that the board's social distinction requirement has been consistent since the first particular social group decision in a matter of ACOSTA, which is where the board first held that the immutability test is how you determine whether something constitutes a cognizable particular social group. With time, the board determined, using its expertise, that additional requirements were I might mispronounce it, but it's I-U-STEM Generous, which is where the board interpreted a particular social group so that it would follow in line with the other four protected grounds, race, religion, nationality, and... We know the doctrine. Okay, sorry. So anyway... And none of this was briefed, so... Yeah, so I guess to conclude, we would argue that Katimi is not dispositive because this court was addressing social visibility, which was a slight, I could say, misinterpretation of what the board interpreted. And if this court believes that it would like to reach the Chevron deference issue, then respondent respectfully requests the opportunity to file a supplemental brief on that issue. And I see that my time is very up, so if there are no further questions, I would again request that this court remand... It is very up. Yes. Thank you so much, Your Honor. You're welcome. Mr. Skaken, we gave your opponent extra time, so I'll give you an extra three minutes as well in rebuttal. That's very kind, Your Honor. Thank you. Your Honor, I do want to very briefly address just a few points. First, we do believe this court would have the authority and the power to order the return of the petitioner. That would be, we believe, part and parcel of the jurisdiction over this matter. And I understand that a previous opinion by this court in the Samira case addressed the power to address... I'm sorry, concerned the power to address unlawful exclusion. I also... Perhaps with my colleague's indulgence, suggest that a separate motion to that effect might be helpful, that we give the government an opportunity to address that as well. And we'll get out an order if my colleagues are agreeable in fairly short order. Yes. We'll submit an order or issue an order later today, giving you a schedule for filing that. Thank you very much, Your Honors. The one other issue then I would take the time to address is the LEA decision. And I think Your Honors are exactly right that LEA didn't change the test to be applied here, the one central reason test, which frankly comes from the statute and has been applied by many decisions at the board and here. And the board itself in this decision applied that test. It invoked it four times. That test is a fact-based test. And this court has previously reversed board findings about one central reason for the test. The record as a whole compels a conclusion opposite of what the board found. We believe that's the situation here. The record as a whole compels the conclusion that the motivation for the persecution of Petitioner was his relationship to his brother. And we think what's most telling here are the persecutor's own statements. When they found Petitioner on his remote farm, just days after his brother defected from the gang, they said, tell us where your brother is or we're going to kill you. There's no other motivation in the record. There's no other motivation nearly as powerful as the persecutor's own statements. So a remand we don't believe is necessary because the board already applied the correct test, and this court is able to reverse that finding because the record evidence compels the opposite conclusion. Unless Your Honors have any other further questions. I actually have a question about what evidence was presented before the immigration judge with regard to Petitioner's ability to relocate within El Salvador. Because after all, that's where he is now. Yes, Your Honor. So the evidence, as I understand it and recall it, was that the gangs are national bodies that can find people anywhere throughout the country. And a few examples were actually given where gangs found people who did try and relocate. Now, the immigration judge concluded that Petitioner did not satisfy his burden of showing that he could not internally relocate. However, that burden was placed on Petitioner only because the immigration judge found that the threat by the gangs was not sufficient to rise the level of persecution. There was no past persecution giving rise to a presumption of future persecution. If there's a remand, that burden would be flipped because the board found a presumption of future persecution, meaning that the burden of proof on internal relocation would be shifted to the government. And I suppose on a remand, they could seek to reopen that issue and present evidence showing that Petitioner could not relocate. In that instance, of course, we would hope to present evidence, in particular, showing that he's found it necessary to be in hiding and not go out of doors. The standard for relocation means not hiding, right? That's exactly right, Your Honor. This court has said relocation does not require you to be in hiding. Thank you very much. Thank you. Our thanks to both counsel. The case is taken under advisement.